## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| NORMAN HORSLEY, an individual,<br><br>Plaintiff,<br><br>v.<br><br>WILLIAM WARDWELL, individually and as Trustee of the Shirley Packer Trust,<br><br>Defendant. | Case No. 1:22-cv-00217-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

### INTRODUCTION

Defendant William Wardwell's Motion to Dismiss (Dkt. 10) is fully briefed and before the Court. The Court will grant the motion and dismiss Horsley's claims with prejudice.

### BACKGROUND

The great American satirist, Ambrose Bierce, once cynically observed that "death is not the end. There remains the litigation over the estate."[1] Sadly, that dim

---

[1] *Ambrose Bierce Quotes,* BRAINYQUOTE, https://www.brainyquote.com/quotes/ambrose_bierce_128141 (last visited Dec. 29, 2022).

view of reality was borne out in this case.

Shirley Packer, the grantor of the Shirley Packer Trust, passed away in 2008. Unfortunately, the administration of her Trust quickly broke down. What ensued, in one arbitrator's words, is a "tragic true story of a family gone asunder" and a "family inheritance materially depleted or diverted because of real and imagined misconduct." *Verified Petition* at 72, Dkt. 10-3.

Today's iteration of the trust dispute involves claims by Plaintiff Norman Horsley, a Trust beneficiary, against Defendant William Wardwell, a court-appointed trustee. Horsley has two main complaints. First, he claims that all state court orders and judgments previously entered regarding distribution of the Trust are void because the state courts lacked subject matter jurisdiction to enter them. And second, Horsley claims that Wardwell violated fiduciary duties in his capacities as a trustee and an attorney. Before analyzing these claims, the Court reviews the relevant litigation history.[2]

## 1.      The Arbitration Agreement

_____

[2] Both parties request judicial notice of numerous exhibits under Federal Rule of Evidence 201. Wardwell's exhibits include pleadings of the Magistrate and District Courts of Owyhee County, Idaho. Dkt. 10-16. Horsley's exhibits include many of the same records as well as the Rules of the American Arbitration Association. Dkts. 22-2 & 23. The Court finds that the exhibits offered by both parties constitute "matter[s] of public record" not subject to reasonable dispute, and the Court therefore takes judicial notice of each. Fed. R. Evid. 201(b).

The Trust named Norman and Scott Horsley, Shirley's sons, as co-trustees of the Trust. *Id.* at 73. Right out of the gates, alleged misconduct by both led to litigation, mediation, and a settlement in 2009. *Id.* The parties memorialized the settlement in a Settlement Memorandum adopted by the Honorable Dan Grober of the Third Judicial District. *Id.* at 54. The Memorandum contained the following arbitration provision:

> Any dispute arising between or among Beneficiaries, or between or among any Beneficiary and the Trustee shall be resolved by binding arbitration in Owyhee County, Idaho, situs of the Trust Registration, in accordance [with] the rules of the American Arbitration Association. Any party to such arbitration must be represented by an attorney in the proceedings. The prevailing party in arbitration shall be entitled to an award of reasonable attorney's fees and costs incurred.

*Id.* at 58. In April 2010, Judge Grober affirmed that the arbitration provision "binds all beneficiaries and successor trustees to resolve all issues concerning The Shirley Packer Trust through binding arbitration." *Def.'s Br.* at 3, Dkt. 10-1.

## 2.   Past Arbitration Proceedings

In the years following the 2009 settlement, Horsley invoked the arbitration provision to initiate two arbitration proceedings.[3] *Id.* at 4. In the first, Horsley

---

[3] The first arbitration began in 2012 and concluded in 2013. The second began in 2016 and concluded in 2017. *Def.'s Br.* at 3, Dkt. 10-1.

brought claims against Scott and other beneficiaries. On April 17, 2013, the arbitrator issued a final award against Horsley based on claim preclusion and awarded over $65,000 in attorneys' fees against Horsley. *Verified Petition* at 75, Dkt. 10-3.

In the second arbitration, Horsley brought claims against Wardwell, whom the Court had appointed in January 2014 to administer the Trust. *Id.* at 76. The arbitrator issued a Partial Final Award in February 2017. After a scathing review of Horsley's conduct—"bordering on paranoia"—the arbitrator addressed Horsley's claims point-by-point. *Id.* at 85–86. One issue presented was "[w]hether the Trustee has breached his duties to the beneficiaries" by:

> expending trust funds to resist arbitration; expending trust funds to resolve disputes between the Trustee and the Beneficiaries outside of arbitration and engaging in self-dealing by hiring his own law firm to represent him in disputes with the beneficiaries; failure to pay attorney fees pursuant to the agreement, even the attorney fees that he agreed were to be paid; using trust funds to engage in actions which represented a conflict of interest between himself and a beneficiary; failure to provide an accounting; and failure to allocate receipts and disbursements to principal and income.

*Id.* at 86.

The arbitrator concluded that "Wardwell has [not] committed any breaches of duty." *Id.* And in his Final Award in May 2017, the arbitrator again affirmed that "Will convincingly established at the final hearing that [Horsley's] objections

to Will's performance as trustee were invalid." *Id.* at 91. In November 2017, the Honorable Thomas Ryan of the Third Judicial District issued an order and judgment confirming the arbitrator's Partial and Final awards. *Id.* at 101–06.

### 3.    Subsequent Attempts to Arbitrate

In July 2018, ten years after the Trust became irrevocable, Wardwell petitioned the Third Judicial District to confirm his final accounting of Trust assets and liabilities and approve a final plan of distribution. *Id.* Shortly thereafter, Horsley filed an answer to Wardwell's petition objecting that the petition—a judicial action—could not be filed with the court because the arbitration provision prohibited Wardwell from litigating rather than arbitrating Trust matters. *Memo. Decision* at 3, Dkt. 10-4.

Wardwell moved for summary judgment because Horsley's objections were similar to those previously raised in the 2016–2017 arbitration. The court agreed and granted summary judgment on April 8, 2019. *Id.* at 7. Res judicata barred Horsley's objections because the prior arbitration "gave all involved a full and fair forum to be heard" and "resulted in an arbitrator's award which was reduced to a judgment." *Id.*

Horsley promptly filed a formal application for arbitration, asking the court to refer the Trustee's petition and related disputes to arbitration. *Def.'s Br.* at 7,

Dkt. 10-1. Shortly thereafter, the court entered a final judgment approving Wardwell's final accounting and plan of distribution and authorizing him to distribute Trust assets to the beneficiaries. *Final Judgment* ¶ 6, Dkt. 10-5. The Judgment stated that "[a]ll potential claims by Beneficiaries have been fully arbitrated or released." *Id.*

With a judgment in hand finalizing the Trust accounting and distribution, Wardwell moved to dismiss Horsley's application for arbitration. Before the court could resolve the motion for arbitration and motion to dismiss, Horsley made yet another attempt to initiate arbitration, this time in the form of a motion to reconsider the court's April 8 order. *Def.'s Br.* at 8, Dkt. 10-1. On August 30, 2019, the court resolved the outstanding motions, denying Horsley's application for arbitration, motion to reconsider, and request for a stay of the litigation. *Memo. Decision*, Dkt. 10-6.

In doing so, Judge Grober expressly rejected Horsley's argument that state courts had failed to enforce the arbitration agreement and therefore lacked authority to enter orders winding up the Trust. Judge Grober explained in the August 30 order:

> Horsley has repeatedly asserted that because of the arbitration clause, this court is without authority to act in any way. If this court were to interpret the clause as does Horsley, no court could ever take action in the subject matter, nor affirm an arbitrator's decision because doing so

would beyond be beyond the purview of the court. Per Horsley's analysis, if a court were so audacious as to issue an order in this matter, or affirm in arbitration agreement, and Horsley did not agree with that action, the dispute regarding whether the court had authority to enter the order would have to be arbitrated. Applying Horsley's interpretation of the arbitration clause would emasculate "finality." This court declines to adopt his interpretation. This court finds as a matter of law that those issues Horsley would have arbitrated have either been previously decided via litigation or arbitration, are issues that should have been litigated or arbitrated and are thus barred by res judicata, or are issues which are not factually at issue based upon Horsley's legal shortcomings.

*Id.*

But Horsley was not finished. A few months later, in October 2019, he filed a notice of appeal to the state court's April 8 and August 30 orders. The appeal was dismissed as untimely and the court entered a permanent injunction barring Horsley from "filing, seeking, or pursuing . . . any arbitration against the Trustee of the Shirley Packer Trust." *Order Enforcing Final Judgment* & *Order on Trustee's Motion*, Dkts. 10-9 & 10-10.

Several months later, Horsley came back for another bite of the apple. This time, represented by Raymond Schild, he filed a Motion to Set Aside Judgments and Orders Pursuant to IRCP 60(B)(4) asking to invalidate the district court's dismissal of his appeal and all "orders and judgments in this action subsumed in that appeal and otherwise." *Motion to Set Aside* at 14, Dkt. 10-12. Once again, Horsley asserted that "[a]ll the Judgments and Orders entered in this action are

void, as the Court did not have subject matter jurisdiction to enter them." *Id.*  ¶¶ 11 & 13.

Denying Horsley's motion to set aside on January 28, 2021, the court explained:

> This [is] precisely the same argument, although worded just a bit differently, that was raised previously. It was not raised that the Court did not have subject matter jurisdiction but that the Court had to send the matter to arbitration. The words subject matter jurisdiction were not used previously but it was exactly the same argument, same cases, same legal theory as was founded by Mr. Horsley initially.

> The Court spent quite a bit of time in its August [30th, 2019] memorandum decision and order explaining why the Court was able to exercise authority in this matter and why the Court did have jurisdiction in this matter. For the same reasons that were set forth in that memorandum decision from that date, I am denying the motion today to set aside the, or to find void the final judgments that were issued herein.

*Order Denying Motion to Set Aside*, Dkt. 10-13; *Def.'s Br.* at 13–14, Dkt. 10-1.[4]

Thus, for the second time, a state court squarely rejected Horsley's argument that prior orders and judgments were void in light of the arbitration agreement.

Horsley appealed the January 28 order. *Notice of Appeal*, Dkt. 10-14. But, once again, the district court rejected his argument and affirmed the magistrate

---

[4] By written order on January 28, the trial court denied Horsley's motion for the reasons "articulated on the record." *Order Denying Motion to Set Aside*, Dkt. 10-13.

judge's order. In doing so, Senior Judge Joel Horton was "troubled" by Horsley's failure to recognize Idaho precedent making clear that arbitration agreements do not deprive state courts of subject matter jurisdiction. *Memo. Opinion on App.* at 16, Dkt. 10-15 ("Thus, Appellant's contention that the trial court was without subject matter jurisdiction is not only without support, it is contrary to Idaho Supreme Court precedent."). After his loss on appeal to the district court, Horsley did not seek further review in the Idaho courts.

### 4.    This Lawsuit

Instead, four months later, Horsley filed this action in federal court. With a few minor edits, the Complaint re-states Horsley's prior Rule 60(B)(4) motion and asserts that "all rulings, and all Orders and Judgments in this action were void, as the Court had no subject matter jurisdiction to enter them. In the face of a valid arbitration agreement, the only authority of the Court was to dismiss the judicial action in favor of arbitration." *Compl.* ¶ 18, Dkt. 1. Additionally, the Complaint alleges that Wardwell breached his fiduciary duties both as a trustee and as an attorney through "self-dealing, conflict of interest and improper expenditures of Trust funds for his benefit." *Pl.'s Resp.* at 15, Dkt. 25.

Wardwell now asks the Court to dismiss Horsley's case on three separate grounds: (1) the *Rooker-Feldman* doctrine, (2) res judicata, and (3) Idaho law

governing breach-of-trust lawsuits. *Def.'s Br.*, Dkt. 10. The Court agrees that the *Rooker-Feldman* doctrine bars Horsley's challenges to state court orders and judgments as well as Horsley's trustee-based fiduciary duty claims. The Court also agrees that Horsley's attorney-based fiduciary duty claims are barred by claim preclusion.

## LEGAL STANDARD

Federal courts have limited subject matter jurisdiction. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). That is, they can only decide cases as authorized by federal law and the Constitution. *Id.* Most federal civil cases fall within the statutory grants of jurisdiction found in 28 U.S.C. §1331 and §1332. Broadly speaking, those statutes create federal jurisdiction over cases involving federal questions and diverse litigants.

But federal courts do not have jurisdiction over every case otherwise eligible for federal question or diversity jurisdiction. For example, under the *Rooker-Feldman* doctrine, lower federal courts cannot exercise appellate jurisdiction over final state-court judgments. *See Lance v. Dennis*, 546 U.S. 459, 464 (2006) (citing *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983)). Put another way, that doctrine prevents "a party losing in state court . . . from seeking what in substance would be appellate review

of the state judgment in a United States district court." *Henrichs v. Valley View Dev.*, 474 F.3d 609, 613 (9th Cir. 2007) (quoting *Johnson v. De Grandy*, 512 U.S. 997, 1005–06 (1994)).

The *Rooker-Feldman* doctrine bars both (1) direct attacks on state court judgments and (2) *de facto* appeals where "claims raised in the federal court action are 'inextricably intertwined' with the state court's decision such that the adjudication of the federal claims would undercut the state ruling or require the district court to interpret the application of state laws or procedural rules." *Bianchi v. Rylaarsdam*, 334 F.3d 895, 898 (9th Cir. 2003). When the doctrine applies, the federal court is without subject matter jurisdiction and "must refuse to hear the forbidden appeal." *Noel v. Hall*, 341 F.3d 1148, 1158 (9th Cir. 2003).

## ANALYSIS

Under the *Rooker-Feldman* doctrine, this Court lacks subject matter jurisdiction to consider Horsley's challenges to state court orders and judgments. Similarly, the Court cannot take up Horsley's trustee-based fiduciary duty claims that were already resolved in a court-confirmed arbitration. The Court will therefore dismiss these claims. Moreover, although Horsley's attorney-based fiduciary duty claims survive the *Rooker-Feldman* doctrine, they are barred under claim preclusion and will therefore also be dismissed.

1.     **Challenges to State Court Orders and Judgments**

   A.     **Horsley's challenges to state court orders and judgments are barred under the *Rooker-Feldman* doctrine.**

   Horsley's central argument in this action is that all prior state court orders and judgments were "void" because the arbitration agreement deprived the courts of subject matter jurisdiction over trust disputes. *Compl.* at 2, Dkt. 1. At the outset, as Senior Judge Joel Horton noted, Horsley's argument appears to fail under Idaho Supreme Court precedent. *Memo. Opinion on App.* at 16, Dkt. 10-15. But today, this Court need not delve into the merits of Horsley's argument: he already had his proverbial day in court.

   On at least three occasions, a state court squarely rejected Horsley's assertion that prior state-court orders and judgments were void for lack of subject matter jurisdiction. *Memo. Decision and Order*, Dkt. 10-6 (first); *Order Denying Motion to Set Aside*, 10-13 (second); *Memo. Opinion on App.* at 16, Dkt. 10-15 (third).[5] Indeed, Horsley himself acknowledges those rejections. *Pl.'s Resp.* at 3, Dkt. 25. Unsuccessful in state court, Horsley now tries his luck with precisely the same argument in federal court. *See Compl.* at 2, Dkt. 1.

_____

   [5] Moreover, in approving the final disposition of the trust, state courts repeatedly affirmed that "[a]ll potential claims by Beneficiaries have been fully arbitrated or released." *Final Judgment* ¶ 6, Dkt. 10-5.

Horsley hardly could have designed a Complaint more deserving of dismissal under *Rooker-Feldman*. Litigants sometimes make veiled attempts to appeal state court judgments by filing federal claims. But here, there is no veil. Horsley asks this Court to declare that "all rulings, and all Orders and Judgments in [the state court] action were void" based on an argument—lack of subject-matter jurisdiction—expressly and repeatedly rejected by numerous state courts. *Compl.* at 7, Dkt. 1. Such a "request to declare the state court judgment[s] void seeks redress from an injury caused by the state court itself," which is "the clearest case for dismissal based on the *Rooker-Feldman* doctrine." *Henrichs*, 474 F.3d at 613–15.

If the appellate nature of Horsley's Complaint wasn't clear enough, his rhetoric makes it all the clearer. In asking this Court to overturn state court orders, he repeatedly references what the state courts "should have done." *Compl.* at 6, Dkt. 1.[6] It is the prerogative of state appellate courts and the United States Supreme Court to determine what state courts should have done. Federal district courts are not in that business.

---

[6] *Compl.* at 6, Dkt. 1 ("The Court should have done as Judges Grober and Wiebe had previously done . . . The Court should have further found and held . . . Finally, the District Court should not have dismissed the appeal . . ..").

**MEMORANDUM DECISION AND ORDER - 13**

Horsley's claims also constitute *de facto* appeals over which this Court lacks jurisdiction. Even if this Court agreed on the merits that the arbitration agreement removed trust disputes from state court jurisdiction, the Court would have to directly contradict more than one state court order in coming to that conclusion.[7] An "adjudication of the federal claims" would therefore plainly "undercut the state ruling[s]." *Bianchi*, 334 F.3d at 898. Thus, "the district court is in essence being called upon to review the state court decision." *Feldman*, 460 U.S. at 482 n.16. This Court will not do so.

Horsley argues that the *Rooker-Feldman* doctrine does not apply where there is a valid arbitration agreement because "even the question whether plaintiff can bring this action is to be decided by an arbitrator." *Pl.'s Resp.* at 11, Dkt. 25. Horsley is wrong for two reasons.

First, he misunderstands *Rooker-Feldman*. Under that doctrine, this Court does not assess whether Horsley's claims are arbitrable. Rather, it simply recognizes that state courts already did so and refuses to revisit those conclusions.

---

[7] *Order Denying Motion to Set Aside*, Dkt. 10-13 ("The Court spent quite a bit of time in its August [30th, 2019] memorandum decision and order explaining why the Court was able to exercise authority in this matter and why the Court did have jurisdiction in this matter."); *Memo. Opinion on App.* at 16, Dkt. 10-15 ("Thus, Appellant's contention that the trial court was without subject matter jurisdiction is not only without support, it is contrary to Idaho Supreme Court precedent.").

Second, Horsley would be wrong even if this Court *were* determining arbitrability. Unless an arbitration agreement "delegates the arbitrability question to an arbitrator," *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S.Ct. 524, 526 (2019), "[t]he question of arbitrability is a question of law properly for determination by the court." *Storey Const. Inc. v. Hanks*, 148 Idaho 401, 401 n.1 (2009); *see also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so."). Here, the question of arbitrability is not clearly delegated to the arbitrator, so it remains in the judicial wheelhouse. *See generally Am. Reliable Ins. Co. v. Stillwell*, 336 F.3d 311 (4th Cir. 2003) (applying *Rooker-Feldman* to claim that state court erred by refusing to compel arbitration).

In sum, Horsley's challenges to state court orders and judgments are barred under the *Rooker-Feldman* doctrine and the Court will dismiss those claims with prejudice.

## 2. Fiduciary Duty Claims

### A. Horsley's trustee-based fiduciary duty claims are also barred under the *Rooker-Feldman* doctrine.

Horsley also asserts claims for breach of fiduciary duty which he believes are beyond the reach of *Rooker-Feldman*. *Pl.'s Resp.* at 15, Dkt. 25. Wardwell

responds that these claims were similarly "the subject of the prior arbitration" and should be similarly dismissed under *Rooker-Feldman*. *Def.'s Reply* at 4–5, Dkt. 27. Wardwell has it right.

Horsley claims Wardwell violated numerous duties owed in his capacity as trustee. *Compl.* at 13–14, Dkt. 1. On review of the Complaint and prior arbitration award, however, the Court concludes that these claims were specifically rejected in the second arbitration, which the state court subsequently confirmed in an order and judgment. *See Verified Petition* at 100–10, Dkt. 10-3. Moreover, the claims were again specifically rejected in Judge Darrington's grant of summary judgment against Horsley. *Memo. Decision* at 7, Dkt. 10-4. Letting Horsley bring the same claims to federal court would effectively grant appellate review of those state court decisions.

The Court will therefore dismiss Horsley's claims that Wardwell violated fiduciary duties owed in his capacity as trustee of the Trust.

### B.    Horsley's attorney-based fiduciary duty claims are barred by claim preclusion.

Horsley next claims that Wardwell was Horsely's attorney and that he breached fiduciary duties in that capacity. Wardwell concedes that this theory is new but believes it should be dismissed under *Rooker-Feldman* and res judicata. *See Def.'s Br.* at 21 n.19, Dkt. 10-1.

At the outset, upon review of the prior arbitration award and state court orders and judgments, the Court finds that neither the arbitrator nor state courts specifically considered Horsley's attorney-based fiduciary duty claims. Nor are these claims "inextricably intertwined" with the claims resolved by those decision-makers.[8] *Rooker-Feldman* therefore does not apply.

### (1)    Wardwell's res judicata defense is not arbitrable.

Alternatively, Wardwell contends that Horsley's claims are barred under the doctrine of res judicata—specifically, claim preclusion. Horsley responds that Wardwell's res judicata defense is itself arbitrable. Again, the Court agrees with Wardwell.

Res judicata defenses based on prior arbitrations are generally arbitrable unless the arbitration agreement states otherwise. *Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F.3d 1126, 1132 (9th Cir. 2000); *Storey Const. Inc. v. Hanks*, 148 Idaho at 406 n.1. Thus, although a court-confirmed arbitration award is treated the same in all respects as a judgment in a judicial proceeding, that "says

---

[8] Although the facts underlying Horsley's trustee-based fiduciary duty claims substantially overlap with those underlying his attorney-based claims, the theories are sufficiently distinct that Horsley could theoretically succeed on his attorney-based claims despite having failed on his trustee-based claims. The Court therefore concludes that the adjudication of the attorney-based claims would not necessarily undercut the state adjudications of the trustee-based claims.

nothing about which forum or *who* determines the effect of the judgment." *Chiron Corp.*, 207 F.3d at 1133 (emphasis in original).

The Idaho Supreme Court specifically discussed the arbitrability of res judicata defenses in *Storey Const. Inc. v. Hanks*, 148 Idaho 401 (2009). The plaintiff there sued to assert res judicata as a defense against the defendant's efforts to initiate a second arbitration. *Id.* The district court agreed that res judicata barred the defendant from initiating another arbitration. On appeal, however, the state supreme court reversed, concluding that whether res judicata applied was "a matter for the arbitrators to decide." *Id.* at 411. The only question the district court should have resolved was whether the res judicata defense was arbitrable. Given the parties' broad arbitration agreement, the supreme court decided the defense was, indeed, arbitrable. *Id.*

Here, the first question is whether Wardwell's res judicata defense should be arbitrated or resolved by this Court. If Wardwell's defense is arbitrable, the Court need not—and should not—delve into the defense's merits.

As explained above, the parties entered a broad arbitration agreement providing that "[a]ny dispute arising between or among Beneficiaries, or between or among any Beneficiary and the Trustee shall be resolved by binding arbitration." *Verified Petition* at 58, Dkt. 10-3. The Court need not trace the outer

boundaries of that agreement; Horsley's attorney-based fiduciary duty claims are precisely the kind of disputes covered by the arbitration agreement. Moreover, as in *Hanks*, "[t]here is nothing in the parties' [agreement] excluding the defense of res judicata from their agreement to arbitrate." 148 Idaho at 406 n.1. Ordinarily, then, the Court would refer Wardwell's res judicata defense to arbitration.

But this case is unique. The state court permanently enjoined Horsley from "filing, seeking, or pursuing . . . any arbitration against the Trustee of the Shirley Packer Trust." *Order Enforcing Final Judgment & Order on Trustee's Motion*, Dkts. 10-9 & 10-10. Although he now files a Complaint in court instead of formally requesting arbitration, Horsley is plainly pursuing arbitration. Much of his Complaint and Response brief expressly state as much. *See Compl.*, Dkt. 1 & *Pl.'s Resp.*, Dkt. 25. Moreover, now that Wardwell raises the defense of res judicata, Horsley argues the Court's only option is to order arbitration. The Court disagrees and will not reward Horsley's round-about attempt to initiate another arbitration.

After extensive litigation and arbitration of Trust disputes, and in the interest of finality, the state court put a decisive end to any future attempts by Horsley to initiate arbitration. Dkt. 10-10. In doing so, the court effectively set the arbitration

provision off limits to Horsley.[9] This Court will not upend that finality by referring the present dispute to arbitration. Accordingly, the Court concludes that Wardwell's res judicata defense is not arbitrable and the Court will take up the merits of that defense here.

### (2)    Claim preclusion bars Horsley's attorney-based fiduciary duty claims.

Broadly speaking, res judicata defenses "protect litigants from the burden of litigating the same cause of action with the same party or its privy." *Coeur d'Alene Tribe v. Asarco Inc.*, 280 F.Supp.2d 1094, 1117–19 (D.Idaho 2003). In determining whether a state court decision has preclusive effect on a federal action, federal courts apply the state's rules governing preclusion. *See Migra v. Warren City Sch. Bd. of Educ.*, 465 U.S. 75, 83–85 (1984).

Claim preclusion, one form of res judicata defense, applies when three elements are present: (1) the same claim or cause of action arising out of the same facts was involved in a prior suit; (2) the prior suit ended in a final judgment on the merits; and (3) the same parties, or those in privity with them, are involved both actions. *Coeur d'Alene Tribe v. Asarco Inc.*, 280 F.Supp.2d 1094, 1117–19 (D.

---

[9] In this way, this case therefore differs from cases like *Hanks* where the arbitration agreement remains in full effect when the res judicata defense is raised.

Idaho 2003). "In other words, when a valid, final judgment is rendered in a proceeding, it 'extinguishes all claims arising out of the same transaction or series of transactions out of which the cause of action arose.'" *Ticor Title v. Stanion*, 144 Idaho 119, 126 (2007) (quoting *Magic Valley Radiology, P.A. v. Kolouch*, 123 Idaho 434, 437 (1993)). Importantly, "[c]laim preclusion 'does not require resolution on the precise point or question in the present suit that was resolved in the first one.' Rather, it looks to the transaction underlying the prior action." *Elsaesser v. Riverside Farms, Inc.*, 513 P.3d 438, 444 (Idaho 2022) (internal citation omitted).

Wardwell has satisfied each element of claim preclusion. First, Horsley's attorney-based fiduciary duty claims arise out of the same series of transactions as those resolved in the prior court-confirmed arbitration and state court judgments. In both instances, Horsley claims that Wardwell breached fiduciary duties while serving as trustee by engaging in self-dealing and conflicts of interest. *Compare Verified Petition* at 86, Dkt. 10-3, *with Compl.* at 14–15, Dkt. 1. Although his legal theories for liability differ, the underlying facts are the same. Thus, Horsley's attorney-based claims are plainly "relat[ed] to the same cause of action"—violation of fiduciary duties—and "might have been made" in the prior litigation. *Lohman v. Flynn*, 139 Idaho 312, 78 P.3d 379, 386 (Idaho 2003).

Next, the state court issued a final judgment on the merits of Horsley's fiduciary claims when it confirmed the second arbitrator's final award.[10] In its judgment and order dated November 28, 2017, the court confirmed the arbitrator's final award "in all respects," including his conclusion that "Wardwell has [not] committed any breaches of duty." *See Verified Petition* at 100–10, Dkt. 10-3. And finally, both parties to this action were parties to the prior state court litigation and arbitration.

In sum, claim preclusion bars Horsley's attorney-based fiduciary duty claims and the Court will therefore dismiss those claims with prejudice.

## ORDER

**IT IS ORDERED that:**

1. Defendant Wardwell's Motion to Dismiss (Dkt. 10) is

   **GRANTED.** Accordingly, all of Horsley's claims against

---

[10] The Idaho Supreme Court has held that court-confirmed arbitration awards constitute final judgments for preclusion purposes when "adjudicatory procedures were present in the arbitration proceeding." *Western Indus. & Environmental Services, Inc. v. Kaldveer Associates, Inc.*, 126 Idaho 541, 543–44. Relevant factors include whether the parties were "given notice . . . were able to formulate the issues of law and fact in their memos to the arbitrator . . . had the right to present evidence and legal arguments; and, most importantly, the arbitration matter was deemed to be a final resolution between the parties." *Id.* at 544. Here, the Court finds that sufficient adjudicatory procedures were followed in the second arbitration such that the court-confirmed final award constitutes a final judgment.

Wardwell are **DISMISSED with prejudice.**

DATED: January 4, 2023

B. Lynn Winmill
U.S. District Court Judge